# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-157-JDR-CDL

Michael Brooks,

*Plaintiff*,

*versus*

Scripps Media Inc., *doing business as* KJRH-TV,

*Defendant*.

## OPINION AND ORDER

In August 2019, Defendant Scripps Media, Inc., which does business in Tulsa under the name KJRH-TV, hired Plaintiff Michael Brooks as a news anchor. Just over two years into the three-year term of his employment agreement, KJRH informed Mr. Brooks that it was terminating his employment for cause. Mr. Brooks filed a charge of discrimination with the Equal Employment Opportunity Commission, received notice of his right to sue, and filed this lawsuit. Mr. Brooks alleges that KJRH's stated reasons for firing him are pretextual, and that, in reality, KJRH fired him because of his sexual orientation. KJRH has moved for summary judgment, arguing that the undisputed facts do not permit a jury to rule in Mr. Brooks's favor. Dkt. 35. After reviewing KJRH's motion, the related briefing, and the corresponding evidence, the Court DENIES KJRH's motion for the reasons set forth below.

Case No. 23-cv-157

I.

The facts, viewed in the light most favorable to Mr. Brooks,[1] are as follows: KRJH operates a television station in Tulsa, Oklahoma. Dkt. 35 at 7; Dkt. 41 at 6.[2] In August 2019, KJRH hired Mr. Brooks as an evening news anchor and reporter pursuant to an Anchor Multi-Media Journalist Employment Agreement. Dkt. 35 at 8; Dkt. 41 at 6. Although Mr. Brooks was hired as an evening anchor, KJRH had the discretion to reassign him to other roles; he had no right to work in any particular "on air" slot. Dkt. 35 at 8; Dkt. 41 at 6. KJRH also had the right to terminate Mr. Brooks's employment for behavior that, in KJRH's judgment, was "fraudulent, disloyal, destructive, dishonest, insubordinate, immoral or otherwise degrading or detrimental in any way" or otherwise contravened KJRH's Code of Conduct. Dkt. 35-3 at 5. *See* Dkt. 35 at 8-9; Dkt. 41 at 6.

Soon after Mr. Brooks was hired, a comment was made on KJRH's Facebook page indicating that Mr. Brooks was in a homosexual relationship with a "flamboyant black man." Dkt. 35-4 at 12; Dkt. 41 at 10; Dkt. 49 at 3-4. Amy Calvert, the General Manager for KJRH's Tulsa operations,[3] allegedly asked Mr. Brooks whether the statement was true, and advised Mr. Brooks that the "situation could impact his job at KJRH." Dkt. 41 at 10. Later, Ms. Calvert expressed her concern that Mr. Brooks's homosexuality would become public and hurt the station "because this is Tulsa after all." Dkt. 35-10 at 13; Dkt. 41 at 10-11.

---

[1] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (recognizing that a genuine issue of fact exists where "the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party").

[2] All citations utilize CMECF pagination.

[3] Ms. Calvert was responsible for hiring Mr. Brooks. Dkt. 35 at 8. She is no longer employed by KJRH.

2

Case No. 23-cv-157

Mr. Brooks's first several months at KJRH passed without incident. Then, in June 2020, Ms. Calvert and KJRH News Director Geraldo Lopez temporarily reassigned Mr. Brooks to the morning anchor position. Dkt. 35 at 9; Dkt. 41 at 6. When a replacement morning anchor was hired, Mr. Brooks was moved to the noon newscast. Dkt. 35 at 10.[4] While filling in for these roles, Mr. Brooks was assigned other duties, such as cooking segments and field reporting. Dkt. 41-1 at 10 (Tr. 81:3-12). From Mr. Brooks's perspective, his workload during this time was higher than that of the other news anchors. *Id.* at 9-13 (Tr. 79:14-80:5, 85:20-86:2, 91:1-22, 95:7-16). He discussed his concerns with Mr. Lopez and a member of KJRH's human resources department, Shanna Galbreath, in July 2021. Dkt. 41-1 at 13 (Tr. 93:24-94:10). Mr. Lopez responded that he wanted to make an example of Mr. Brooks and encourage others to step up and work equally hard. *Id.* at 12-13 (Tr. 91:21-95:4). Mr. Brooks found this explanation to be "weird," and concluded that he was being singled out because of his status as a homosexual. *Id.*

In October of 2021, meteorologist Michael Collier informed Ms. Calvert that Mr. Brooks had created a fake profile on Grindr, a dating app, and had used it to connect with Mr. Lopez. Dkt. 35 at 11.[5] Ms. Calvert reported the incident to human resources. *Id.* at 12. KJRH Employee Relations Director Katie Wilson[6] investigated the allegation (and new allegations raised while the investigation proceeded) by interviewing Mr. Brooks, Ms. Calvert, and other KJRH employees. *Id.*

---

[4] Once a permanent noon anchor was hired, Mr. Brooks was reassigned to the 5:00 and 6:00 newscasts, in addition to other reporting duties. Dkt. 35 at 10; Dkt. 41 at 6.

[5] Mr. Brooks allegedly created the fake account to investigate an anonymous tip that Mr. Lopez was leaving during work hours to meet with individuals that had contacted him through Grindr. Dkt. 35-2 at 28-29.

[6] At the time of the investigation, Ms. Wilson's last name was Ford. For continuity, "Ms. Wilson" is used throughout this opinion.

3

Case No. 23-cv-157

The notes from Ms. Calvert's interview are particularly salient to Mr. Brooks's claims, as they could support the conclusion that Ms. Calvert treated Mr. Brooks differently from other employees and viewed him in a negative light. For example, Ms. Calvert had regular check-ins with news anchor Karen Larsen; in contrast, she had "zero" conversation with Brooks and, as of November 2021, "ha[d] not talked to [Mr.] Brooks for . . . six months." Dkt. 36-1 at 20-23. Despite her limited interactions with Mr. Brooks, as well as her apparent failure to ask for his side of the incidents reported by his colleagues during the months preceding her interview, Ms. Calvert had a strong opinion of Mr. Brooks's lifestyle, which she characterized as "volatile," "non-conventional," and "shocking."[7] *Id.* She also made several potentially unfounded assumptions about Mr. Brooks, suggesting to Ms. Wilson that Mr. Brooks would retaliate against her, stating that he might have a side that was not "well," and intimating that he had engaged in the outright extortion of Mr. Lopez.[8] It appears that Ms. Wilson

---

[7] Although there is some dispute as to the origin and context of these statements, there is sufficient evidence to permit a jury to conclude the statements originated with Ms. Calvert and reflect her personal bias. *See* Dkt. 35-4 at 34 (stating that the words originated with Ms. Wilson); Dkt. 35-5 at 20 (indicating Ms. Calvert was summarizing her conversation with Mr. Brooks, and that it "would be a concern if that's how she felt"); Dkt. 35-2 at 38 (indicating that Mr. Brooks "never made that statement" to Ms. Calvert). The Court assumes, as it must at this stage, that the investigation report reflects Ms. Calvert's opinions and characterizations. *Bones*, 366 F.3d at 875.

[8] Mr. Lopez was extorted by someone, but the record suggests he was not extorted by Mr. Brooks. In July of 2021, Mr. Lopez was approached on Grindr by an unknown individual who threatened to "release intimate personal information and photos" of Mr. Lopez unless he was paid $10,000. Mr. Lopez reported the incident to Ms. Calvert, but also indicated that the unknown extortionist was "a random person," and not a friend or colleague. Dkt. 36-1 at 22-25. When communicating with Mr. Lopez, the extortionist used incorrect information, information that was only available on public searches, and even data from "another Gerardo Lopez[ ]." Dkt. Dkt. 36-1 at 22, 25; Dkt. 41-3 at 8. Although Ms. Calvert was told that the extortionist was a "random person," she nevertheless assumed that the extortionist "was Mike Brooks" and informed Ms. Wilson that Mr.

relied on some of these assumptions when preparing the report detailing her findings and recommending that Mr. Brooks's employment be terminated. Dkt. 36-1 at 12; Dkt. 35-5 at 27 (Tr. 104:6-14). It is unclear who made the decision to fire Mr. Brooks, but there is no dispute that Ms. Calvert was involved in the decision.[9] KJRH issued a letter, purportedly from Ms. Calvert, informing Mr. Brooks of the "key findings" of the investigation as well as KJRH's decision to terminate Mr. Brooks's contract. Dkt. 35-4 at 38 (Tr. 142:2-143:3) (indicating the letter was from, but not prepared by, Ms. Calvert); Dkt. 35-7.[10] Mr. Brooks filed a charge of discrimination with the Equal Employment Opportunity Commission on March 16, 2022, arguing that KJRH's decision was motivated by Mr. Brooks's age and/or sexual orientation. Dkt. 35 at 15. The EEOC issued a Right to Sue letter on February 1, 2023, and Mr. Brooks subsequently initiated this action for discrimination in violation of Title VII of the Civil Rights Act of 1964 and breach of contract. Dkt. 2.

## II.

KJRH argues that it is entitled to judgment in its favor on each of Mr. Brooks's claims because there are no facts that would permit a jury to conclude that KJRH discriminated against Mr. Brooks or breached its con-

---

Brooks was responsible for extorting Mr. Lopez. Dkt. 36-1 at 21-22. Mr. Brooks denies that he ever extorted Mr. Lopez, and there is nothing in the record that supports Ms. Calvert's assumption that Mr. Brooks was involved in the attempted extortion.

[9] *See* Dkt. 35-5 at 27 (Tr. 104:6-14) (indicating Ms. Calvert made the decision to fire Mr. Brooks based on Ms. Wilson's recommendation); Dkt. 35-4 at 5, 37 (Tr. 12:4-15, 138:1-139:12) (testifying that the decision was a "collective" one and that Ms. Calvert followed the corporate recommendation).

[10] These findings included Mr. Brooks's creation of the Grindr account "for personal gain," the withholding of key facts during KJRH's investigation, Mr. Brooks's joke that they should use luminal, a chemical used to detect the presence of bodily fluids, on the office chairs, and Mr. Brooks's failure to report the loss of a company-issued phone. Dkt. 35-7 at 2.

Case No. 23-cv-157

tract with him. KJRH further argues that, even if Mr. Brooks had a valid claim, the facts do not support an award of damages. When determining whether summary judgment is warranted, this Court must view the evidence in the light most favorable to Mr. Brooks and draw all reasonable inferences in his favor. *Bones*, 366 F.3d at 875. Summary judgment is appropriate only if KJRH can show that, even when the evidence is viewed in this manner, "'there is no genuine issue as to any material fact and ... [it] is entitled to a judgment as a matter of law.'" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).

### A.

The Court first considers Mr. Brooks's claim that KJRH discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Title VII is a remedial measure designed to ensure equality in employment opportunities. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1045 (10th Cir. 2020) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 276 (1982)). The statute prohibits any employer from discharging an employee "because of" that individual's sex or, by extension, his or her sexual orientation. 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton Co.*, 590 U.S. 644, 662 (2020).[11] Thus, the question presented by KJRH's motion is whether there are facts from which a jury could conclude that KJRH fired Mr. Brooks because of his sexual orientation. *Frappied*, 966 F.3d at 1045-46 (recognizing an employer violates Title VII when its em-

---

[11] Although the term "sexual orientation" does not appear in Title VII, the Supreme Court has held that an employer who "discriminate[s] against employees for being homosexual . . . must intentionally discriminate against individual men and women in part because of sex," and that discrimination based upon an employee's sexual orientation is prohibited under Title VII. *Bostock*, 590 U.S. at 662.

6

ployment decision is based, even in part, on the employee's membership in a protected class).[12]

At the summary judgment stage, this question is resolved using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, Mr. Brooks has the obligation to set forth a prima facie case of discrimination by showing that "(1) [he] belongs to a protected class; (2) [he] suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005).[13] If Mr. Brooks makes this showing, the burden shifts to KJRH, which must set forth a legitimate, nondiscriminatory reason for terminating Mr. Brooks's employment. *PVNF*, 487 F.3d at

---

[12] *See* 42 U.S.C. § 2000e-2(m) (providing that an employee can establish discrimination by showing that membership in a protected class was a "motivating factor" for the challenged conduct).

[13] KJRH argues that, to set forth a prima facie case of discrimination, Mr. Brooks must also show that "similarly situated employees outside of his protected class were treated more favorably" than he was. Dkt. 35 at 17. This requirement is part of "an older version of the prima facie case for discrimination which has limited, if indeed any, remaining application in this circuit." *Sorbo*, 432 F.3d at 1173. Courts within the Tenth Circuit now recognize that proof of a similarly situated individual being treated differently is simply *a* means, and not the ***only*** means, of establishing a prima facie case of discrimination. *Id.* (recognizing that "proof that the employer treated similarly situated employees more favorably" is "just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case"); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (recognizing that permitting the nondiscriminatory reasons for termination to defeat a prima facie showing "would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual").

804. It then falls to Mr. Brooks to present evidence that would permit a jury to conclude that KJRH's stated reasons are pretextual. *Id.* at 804-05.

Mr. Brooks's initial burden is not a heavy one, particularly in light of KJRH's concession that the first two elements of the prima facie case are established. *Plotke v. White* 405 F.3d 1092, 1101 (10th Cir. 2005) (recognizing the prima facie showing is "de minimis"). *See* Dkt. 35 at 18 (recognizing that Mr. Brooks is a member of a protected class and that the termination of his employment was an adverse employment action). To make his initial showing, Mr. Brooks need only point to circumstances that give rise to an inference of discrimination, including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" and "preferential treatment given to employees outside the protected class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996) (collecting cases). *See PVNF*, 487 F.3d at 800-801.

Mr. Brooks has pointed to such circumstances here. The evidence shows that KJRH's General Manager, Amy Calvert, believed Mr. Brooks's sexual orientation might be a problem for KJRH. Dkt. 35-10 at 13; Dkt. 41 at 10-11. This statement was not "stray" or "isolated" as KJRH suggests. Dkt. 35 at 22-23. To the contrary, Ms. Calvert expressed these concerns on two separate occasions. Dkt. 35-2 at 47. In addition, she made disparaging statements about Mr. Brooks's lifestyle during the investigation that led to Mr. Brooks's termination. Dkt. 36-1 at 20-23.[14] Ms. Calvert also described Mr. Brooks as a "high risk" hire, even though she had a positive experience when she interviewed him and received positive references from his previous general manager. *Id.* This is direct evidence that Ms. Calvert—who

---

[14] The investigation notes indicate that Ms. Calvert described Mr. Brooks as living "a secret life of a gay man that has very interesting relationships with very colorful and non-conventional lives that are into weird things on social media and present themselves in strange ways." Dkt. 36-1 at 22. She described his life as "volatile" and said it was "shocking . . . that he was living this way." *Id.* at 21, 22.

played a key role in the decision to fire Mr. Brooks—could have been motivated by discriminatory bias. *See Drury v. BNSF Ry. Co.*, 657 F. App'x 785, 789 (10th Cir. 2016) (recognizing that a plaintiff may make a prima facie case by presenting "direct evidence of discriminatory motivation, such as statements made by a supervisor showing racial bias"). The nexus between Ms. Calvert's statements and her role in the decision to terminate Mr. Brooks's employment is sufficient to give rise to an inference of discrimination,[15] and Mr. Brooks has satisfied his de minimis burden under the first step of the *McDonnell Douglas* analysis.

KJRH responds that Mr. Brooks was fired not because of his sexual orientation, but for four nondiscriminatory reasons described in the letter terminating Mr. Brooks's employment. Dkt. 35 at 19; Dkt. 35-7 at 2. Specifically, KJRH alleges that Mr. Brooks violated KJRH's Code of Conduct when he (1) created a fake profile on Grindr, which he used to obtain information on Mr. Lopez "for personal gain"; (2) withheld key facts during KJRH's investigation into Mr. Brooks's misconduct; (3) made a comment about testing the newsroom chairs for bodily fluids using the chemical luminal; and (4) failed to report the loss of his company cell phone in a timely fashion. Dkt. 35 at 19. KJRH claims that "[e]ach of these actions constituted a violation of KJRH's Code of Conduct," and "is a proper legitimate, non-discriminatory reason for termination." Dkt. 35 at 20 (footnote omitted).

Because KJRH has come forward with nondiscriminatory grounds for its decision, Mr. Brooks's claim can only proceed if he presents evidence that would permit a jury to conclude that KJRH's stated reasons for firing him are pretextual. *PVNF*, 487 F.3d at 804-05. "Pretext exists when an employer does not honestly represent its reasons for terminating an em-

---

[15] *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1282 (10th Cir. 2003) (finding a nexus between news director's statements reflecting a desire to utilize on-air reporters under forty years old and the decision not to renew the plaintiff's contract).

Case No. 23-cv-157

ployee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). Mr. Brooks may establish pretext by presenting evidence that KJRH's stated reasons for its decision are weak, inconsistent, implausible, or the product of procedural irregularities or subjective criteria. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007); *Jaramillo v. Colo. Jud. Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005).

The evidence shows that KJRH has not been consistent when setting forth its reasons for terminating Mr. Brooks's contract. Although KJRH now claims that it terminated Mr. Brooks for four non-discriminatory reasons,[16] only two of those were originally cited in support of the recommendation for termination. Dkt. 36-10 (listing the creation of a fake profile and withholding of information as "key points" in the "Action" section of the report).[17] And Katie Wilson, KJRH's Senior Director of Employee Relations, indicated that two of the four reasons cited by KJRH do not constitute independent grounds for termination.[18] KJRH provides no explanation for the discrepancy. KJRH's failure to consistently identify exactly why it

---

[16] Dkt. 35 at 19; Dkt. 35-7 at 2.

[17] The report did reference the other two instances—along with other allegations not presented as grounds for termination in KJRH's brief—but they were not identified as reasons for termination. *See* Dkt. 36-1 at 7-8 (indicating Mr. Brooks joked about using luminal on the chairs "because they were talking about how dirty and old they were"); *id.* at 10 (noting steps to be taken to attempt to recover phone).

[18]   Q: Are each of these sufficient on their own to justify termination?

A: Yes, the first two bullets.

Q: The second two . . . they justify it in conjunction with . . . the remainder of the claims; . . . is that what your testimony is? . . .

\*\*\*

A: Correct.

*See* Dkt. 35-5 at 28 (Tr. 107:25-108:13).

Case No. 23-cv-157

terminated Mr. Brooks's employment is sufficient to create a jury question as to whether KJRH's stated grounds for its decision are pretextual. *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005) (recognizing that the employer's "inconsisten[cy] in the reasons it provided for the termination" was an "indication of pretext"); *Fassbender v. Correct Care Sols., LLC*, No. 17-3054, 2018 WL 2208473, at *8 (10th Cir. May 15, 2018) (recognizing that a jury may reasonably infer pretext from inconsistencies, including "abandoning explanations that the employer previously asserted").

Of the remaining justifications for KJRH's decision, one is the product of KJRH's application of purely subjective criteria: KJRH's claim that Mr. Brooks withheld facts during KJRH's investigation appears to be based on nothing more than Katie Wilson's subjective assessment regarding how free and open Mr. Brooks should have been during his interview. Ms. Wilson took issue with Mr. Brooks's decision to give "very short or limited answers" that required her to "ask questions to get the full story" about his medical marijuana card, the creation of his Grindr account, and photographs he viewed on his cell phone.[19] Dkt. 35-5 at 18. But she concedes that some of what she perceived as dishonesty may have been a mere failure of recollection, and that Mr. Brooks gave additional details when prompted,

---

[19] Ms. Wilson did not identify during her deposition any other instances where Mr. Brooks failed to provide information. Dkt. 35-5 at 17-18. KJRH now claims that Mr. Brooks failed to admit that he placed marijuana on a colleague's car. Dkt. 35 at 13. But this was not one of the failures cited by Ms. Wilson. Dkt. 35-5 at 17-18. Ms. Wilson found the allegations regarding the marijuana pre-roll to be only "partially substantiated" and did not expressly conclude that Mr. Brooks had withheld information with respect to that topic. *Id.*; Dkt. 36-1 at 8. Although Mr. Brooks now admits that he did give marijuana to Mr. Collier [Dkt. 35-2 at 26], KJRH cannot rely on post hoc justifications for firing Mr. Brooks. *E.g., Frappied*, 966 F.3d at 1059 (concluding that the employer's "[p]ost-hoc justifications for termination constitute[d] evidence of pretext"); *Housley v. Spirit Aerosystems, Inc.*, 628 F. App'x 571, 575 (10th Cir. 2015) (recognizing that after-acquired evidence of wrongdoing, while relevant to damages, cannot shield an employer from liability for discrimination under the ADEA).

11

ultimately providing complete information with respect to each of the topics she identified. *E.g., id.* ("Q: But, in any event, he provided that information in response to further questions, correct?" A: Yes.").[20] And there is evidence to suggest that, to the extent Mr. Brooks delayed in providing the information Ms. Wilson requested, the delay was quite brief. *See* Dkt. 35-2 at 36 (indicating that any delay in disclosing information was "just seconds" in length). A jury could conclude that KJRH's decision to characterize a short delay in disclosure as a total failure to cooperate as "the type of "[o]bviously subjective decision making" that serves as a cover for unlawful discrimination. *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981). *See Plotke*, 405 F.3d at 1106 (stating that a jury could infer discrimination where, among other things, a supervisor subjectively believed the employee was not trustworthy but had no proof that the employee intended to deceive her employer).

The Court now turns to the final purported reason for Mr. Brooks's termination—his creation of a false online dating profile. Dkt. 35-7. The Court concludes there is evidence that would permit a jury to doubt KJRH terminated Mr. Brooks for this reason. First, KJRH has been inconsistent when characterizing its concerns about Mr. Brooks's conduct in connection with that account. KJRH initially labelled Mr. Brooks's actions as an at-

---

[20] Dkt. 35-5 at 17 (regarding Mr. Brooks's medical marijuana card) (indicating that Mr. Brooks "withheld information until he was prompted multiple times to provide that information"); *id.* at 18 (regarding Mr. Brooks's answers regarding his Grindr account) ("Q: So . . . you're not stating that he didn't provide the full information . . . it's just you had to ask prompting questions to get what you thought was a – a full explanation? A: Yes. You could . . . I could sense that he was not giving the information, with very short or limited answers, and so having to continuously ask questions to get the full story from him."); *id.* (testifying that, when Ms. Wilson asked Mr. Brooks about photographs he viewed on his personal phone, "it was difficult to understand whether he was withholding or if he didn't have the information," and that he answered the questions when his recollection was refreshed).

tempt at extortion.[21] But KJRH later retreated from that characterization, and now claims Mr. Brooks would have violated KJRH's Code of Conduct regardless of his reasons for creating the account.[22] Second, KJRH's conclusion that Mr. Brooks engaged in extortion appears to be based primarily on the unfounded assumptions of Ms. Calvert—the very individual who Mr. Brooks claims is biased against him.[23] Evidence that KJRH has changed its position regarding the reasons for its decision could support a finding of pretext, as could the evidence that Ms. Calvert's potentially biased and unfounded characterizations influenced the outcome of KJRH's investigation. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 950 (10th Cir. 2011) (recognizing that a supervisor's animus can be a but-for cause of termination where the "supervisor falsely reports" a violation, which leads to an

---

[21] *See* Dkt. 36-1 at 4 (indicating Mr. Brooks created a Grindr account to "extort" Gerardo Lopez); Dkt. 35-7 at 2 (indicating Mr. Brooks wanted to obtain private information for "personal gain").

[22] *E.g.,* Dkt. 35-5 at 18 ("Q: So you're not talking about personal gain for employment reasons or for monetary reasons, you're calling personal gain just for him to have than knowledge? A: Correct."); Dkt. 35-4 at 31 (indicating that Mr. Brooks wanted to "hurt" Mr. Lopez, and that he was fired "under the code of conduct" rather than "for extortion").

[23] Ms. Calvert linked Mr. Brooks's conduct to a prior extortion attempt against Mr. Lopez. Dkt. 35-4 at 21; Dkt. 36-1 at 21-22. But the evidence suggests that Mr. Lopez's alleged extortionist was not someone he knew personally. Dkt. 36-1 at 21-27; *id.* at 6, 25 (indicating that "[the extortionist] wasn't a real person that really knew [Mr. Lopez] because they were bringing up only information on background searches" on a different Geraldo Lopez, and the information used was "not at all accurate"). KJRH's conclusion that Mr. Brooks extorted Mr. Lopez appears to be based primarily, if not solely, on assumptions made by Ms. Calvert. *E.g., id.* at 20 (indicating that, while Mr. Collier did not use the word "extort" when reporting Mr. Brooks's behavior, Ms. Calvert connected Mr. Brooks's conduct to the prior incident of extortion and concluded that the other incident involved Mr. Brooks).

Case No. 23-cv-157

investigation and decision influenced by the same supervisor); *Whittington*, 429 F.3d at 994 (finding inconsistency to be evidence of pretext).

Even if KJRH had taken a consistent position regarding its concerns about the Grindr account, the Court would still permit this case to proceed to trial based on the weaknesses of the other three reasons proffered for KJRH's decision. Where, as here, a "plaintiff casts substantial doubt on many of the employer's multiple reasons" for its employment decision, a "jury could reasonably find the employer lacks credibility" and disregard the remaining reasons proffered by the employer. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). "This is but common sense," as a jury could reasonably infer that an employer who "is shown to have lied about a number of issues . . . should not be believed as to other issues." *Id.* (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1050 (11th Cir. 2000) (Birch, J., concurring in part and dissenting in part)). The fact that Mr. Brooks has cast doubt on three of the four proffered reasons for his termination is, by itself, sufficient to allow this case to be heard by a jury. *Id.*

KJRH argues that its decision should not be subject to challenge because Mr. Brooks's termination was the product of an independent investigation, conducted by Ms. Wilson, who did not take Mr. Brooks's sexual orientation into account when making her recommendation. Dkt. 35 at 23-24. But an independent investigation will not necessarily insulate an employer's decision where the investigation is supported or influenced by a biased individual. *E.g., Simmons*, 637 F.3d at 950 (recognizing that a supervisor's animus can be a but-for cause of termination where the supervisor submits a false report giving rise to termination or writes unfavorable reviews that give rise to disciplinary action); *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1253 (10th Cir. 2006) (recognizing that a "biased investigator can issue reports and recommendations influenced by his or her bias and thereby cause decision makers who rely on those reports to fire an employee unlawfully"). In this case, the evidence could support the conclusion that KJRH

actually believed that Mr. Brooks should be fired for cause; but it could also support the conclusion that KJRH only fired Mr. Brooks because Ms. Calvert's bias against Mr. Brooks influenced the investigation resulting in Mr. Brooks's termination. The question of which characterization of the evidence is correct is for a jury, not this Court, to decide. Accordingly, KJRH's motion for summary judgment on Mr. Brooks's discrimination claim is DENIED.

### B.

KJRH argues that this Court should grant summary judgment with respect to Mr. Brooks's "new" claim for discrimination based on his reassignment and heavy workload. Dkt. 35 at 25. Mr. Brooks responds that he is not asserting, and has not asserted, any claim of discrimination based solely on his reassignment or workload, but believes the evidence regarding those issues is pertinent to his claim that his employer was biased against him. Dkt. 41 at 20. Because Mr. Brooks is not asserting a new, separate claim for relief, KJRH's motion for summary judgment on this issue is DENIED as MOOT.

### C.

KJRH's argument for summary judgment on its breach-of-contract claim depends upon its assertion that it terminated Mr. Brooks for violating the KJRH Code of Conduct. Dkt. 35 at 28. As discussed in Section II.A, *supra*, a jury could find that KJRH's decision was the product of discriminatory animus, rather than a legitimate exercise of KJRH's contractual rights. Accordingly, there is a question of fact as to whether KJRH breached its contract with Mr. Brooks, and summary judgment on Mr. Brooks's breach-of-contract claim is DENIED.

### D.

Finally, KJRH argues that Mr. Brooks should not be permitted to recover actual or exemplary damages because Mr. Brooks has made negligible efforts to find alternate employment, and because there is no evidence from

Case No. 23-cv-157

which a jury could conclude that KJRH acted with malice. Dkt. 35 at 30-32. There is evidence in the record of Mr. Brooks's attempts to find alternative employment. Dkt. 35-2 at 9-10. Mr. Brooks was required only to make a reasonable, good-faith effort to mitigate his damages, and the Court is not satisfied that, as a matter of law, Mr. Brooks failed to make the necessary effort here. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (concluding that the plaintiff, an investigative reporter, had not failed to establish mitigation as a matter of law where he made calls and sent letters to other local stations before becoming self-employed, but declined to conduct a nationwide search for employment as a reporter). Nor is the Court willing to conclude, at this stage, that there is no evidence from which a jury could infer malice, willfulness, or reckless indifference, as suggested by KJRH. Dkt. 35 at 31. Accordingly, KJRH's motion to dismiss Mr. Brooks's claim for damages is DENIED.

### III.

For the reasons set forth above, the Court concludes that genuine issues of material fact exist as to whether KJRH discriminated against Mr. Brooks because of his sexual orientation, and whether Mr. Brooks would be entitled to damages if the jury concludes that KJRH's decision was unlawful. The factual disputes preclude the entry of summary judgment with respect to both Mr. Brooks's discrimination claim and his breach-of-contract claim. Accordingly, KJRH's Motion for Summary Judgment [Dkt. 35] is DENIED.

DATED this 29th day of July 2024.

_____
JOHN D. RUSSELL
*United States District Judge*

16